CANADAY v. BOLIVER.

1. A creditor, holding a joint and several bond secured by a mortgage of
   each of the obligors upon their lands respectively, instituted his action
   of foreclosure, in which each of the defendants claimed to be a mere
   surety. *Held,* that the court properly determined first the relation of
   the defendants towards each other, but such relation having been
   determined, the Circuit Judge erred in recommitting the cause to the
   master for an adjustment of accounts between these defendants without
   decreeing a foreclosure.
2. B having borrowed money from A for the use of C, to whom B paid it,
   both B and C giving their bond secured by a mortgage of their lands
   respectively, the lands of B should be first sold under a decree of fore-
   closure; but upon such sale, B would be entitled as equitable assignee
   to be reimbursed out of the lands mortgaged by C.

Before COTHRAN, J., Orangeburg, September, 1885.

The opinion sufficiently states the case.

*Messrs. James F. Izlar* and *A. B. Sawyer,* for plaintiff.

*Mr. Samuel Dibble,* for Boliver.

*Mr. Abial Lathrop,* for Livingston.

*Messrs. Henderson Bros.,* for Mrs. Kitching.

October 22, 1886.   The opinion of the court was delivered by
MR. JUSTICE MCGOWAN.   On May 30, 1876, George Boliver
and John H. Livingston gave a joint and several bond to E. S.
Canaday for $7,500, money borrowed—$6,000 at the time the
bond was executed, and $1,500, which Boliver had previously

borrowed and given his note for—with interest from May 30, 1876, at the rate of 12 per cent. per annum. In order to secure the bond, Boliver mortgaged certain lands and lots in Orangeburg County, viz., "four lots with the buildings thereon in the town of Orangeburg," and six tracts of land in said county, imperfectly described in the "Brief" as follows: "Containing, respectively, about 1,800 acres (less 3 acres, more or less), 301¾ acres, 236¾, 263¾, 385 acres, 378 acres (less 15 acres), and 130 acres." And the said Livingston mortgaged a tract of land containing 4,114 acres, less 500 acres previously sold to C. A. Keel, and 100 acres previously bargained to George Corley.

The mortgagee, Canaday, in consideration of $2,000 paid on the bond by Boliver, and with the consent of Livingston, released Boliver's mortgage on 1,314 acres of the 1,800 acre tract, and also on the tracts of 301¾ acres, 236¾, 385 acres, and 130 acres. On November 14, 1881, and April 21, 1884, Livingston, without the consent of Boliver, for value received, conveyed portions of the Aiken land covered by his mortgage, but without accurate description, to Harriet C. Kitching; and it does not clearly appear how much, if any, of the land mortgaged is still in the possession of the mortgagor, Livingston. The bond and mortgages were assigned to Annie I. Canaday, in trust for the use of her daughter, Annie E. S. Canaday, who intermarried with A. B. Sawyer and died intestate, leaving as her heirs at law her said husband and an infant son, Arthur, who is also now dead, leaving his father, the said A. B. Sawyer, the sole heir of the *cestui que trust*, Annie E. S. Canaday.

From time to time payments were made on the bond, but a large balance still remaining due, the trustee, Annie I. Canaday, as plaintiff, instituted this proceeding, an ordinary action of foreclosure of both mortgages, making parties defendant not only the mortgagors, but Harriet C. Kitching, the said purchaser of portions of the Aiken lands sold and conveyed to her by Livingston. The obligors of the bond answered, each claiming that he was only surety, and that the other was the principal debtor to Canaday, and therefore his lands should be first sold for the payment of the debt; and Mrs. Kitching concurred with Livingston that he was really only surety on the bond, and insisted that she had

good title to the lands conveyed to her by him.   Besides, it was contended that there was a complicated settlement of accounts between Boliver and Livingston, and the foreclosure of the plaintiff's mortgages should be delayed until it could be ascertained how that account stood.

It was referred to the master, A. C. Dibble, Esq., to hear and determine the issues in the case.   He ascertained that the balance due on the debt September 15, 1885, when he made his report, was $5,743.44.   As to the relative liability of Boliver and Livingston, there was much testimony, which is very well condensed in the Circuit decree, as follows: "On June 8, 1875, the county commissioners of Orangeburg County awarded the contract for building a new court house at Orangeburg to the defendant, J. H. Livingston, for the sum of $28,900.   The defendant, Boliver, was a bidder for the contract, but failed to get it.   After the same was awarded to Livingston, Boliver proposed to go in with him, and was accepted as a partner.   Boliver undertook to procure a suitable place for making brick, to be used in the construction of the building, and purchased some of the Treadwell lands near by for that purpose.   A brickyard was established thereon, and about 100,000 bricks made.   These were rejected by the architect, whereupon Livingston, who seems to have had charge of the active operations of the business, and Boliver of the financial, declared his purpose of attempting another kiln; to this Boliver objected, as he said they had already sunk $1,000, and upon Livingston persisting, Boliver withdrew from the copartnership.

"They had both occupied, and were, perhaps, then occupying, offices in the court house, one as sheriff and the other as auditor or treasurer; and upon Boliver's withdrawal from the copartnership, Livingston sought pecuniary aid from him to carry on his contract with the county commissioners, the annual levies which were provided by the legislature for raising the money being too slow to meet the exigency of the speedy completion of the building.   For a certain consideration Boliver agreed to do this.   He had already secured a loan (the $1,500 note) from S. B. Canaday, for which he had given his bond and mortgage of land.   But $6,000 more was required, and Boliver undertook to obtain that sum from the same source.   Canaday agreed to give up to Boliver

the bond and mortgage for $1,500, and to take a new bond, including that sum and interest, adding thereto an amount in cash sufficient to make up the $7,500; but he demanded security in thrice the amount of the new loan. Up to this time the money borrowed seems to have been secured and obtained by Boliver alone, but he then said to Livingston, 'that old codger (meaning Canaday) required a mortgage of his lands also.' Livingston yielded his assent to join Boliver in putting up the additional security, and did mortgage his Aiken lands. As a premium to Boliver for this brokerage arrangement, Livingston agreed to construct for him, and did construct, a three-story brick building in the town of Orangeburg, and agreed, besides, to refund to Boliver the whole amount of money thus procured for him out of the first payments by the county commissioners on account of the building of the new court house," &c.

Upon this state of facts the master held: "That as between the defendants, Livingston and Boliver, the defendant, Livingston, must be regarded as the principal and the defendant, Boliver, as the surety, upon said bond for the principal sum thereof, with the interest that may be due thereon from November 20, 1877, when Livingston had collected sufficient funds from the court house contract to pay said bond, such interest to be computed in accordance with the terms of said bond. That the defendant, Boliver, must be regarded as the principal, and Livingston as the surety, for the interest that may be due on said bond from May 15, 1876, to November 20, 1877, in accordance with its terms."

To this report there were exceptions, and upon the hearing before Judge Cothran he reversed the ruling of the referee as to the relative liability of Boliver and Livingston; and thereupon, without making any decree of foreclosure, recommitted the report to the master, to make another report holding Boliver to be the principal and Livingston the surety. From this decree all the parties appeal—the plaintiff on the ground that there was error in not adjudging the mortgaged premises to be sold and the proceeds applied towards the payment of the amount reported to be due to the plaintiff on the bond; there being no question as to such amount, or as to the plaintiff's right to recover.

The defendant, Boliver, filed numerous exceptions, which are

in the "Brief." In substance, they complain that it was error on the part of the Circuit Judge to hold that Boliver was the principal and Livingston the surety on the bond secured by their respective mortgages; and that, on the contrary, "he should have held that all the land mortgaged by Livingston was primarily liable for the mortgage debt, and, after paying that, then for the excess of Boliver's payments over and above his liability for interest on the plaintiff's bond, and that for these liabilities of Livingston the premises mortgaged by him should be first subject to foreclosure and sale; and that the lands mortgaged by Boliver should only be held subject to sale in case the land mortgaged by Livingston should be insufficient to satisfy the mortgage debt."

None of the many questions made and argued, except those which are here on appeal from the decree of the Circuit Judge, are really before us. The judge ruled nothing as to the correctness or incorrectness of the account stated between the defendants, but he held that, according to the circumstances of the case, Boliver was the principal and Livingston only surety on the bond to Canaday, and, as the report of the master had been made up on a different view of this fundamental fact, he thought it premature to decree a foreclosure, and recommitted the whole matter with instructions to make a report on the view held and expressed by him.

The plaintiff complains of error rather of omission than of commission—that the judge should have made a decree of foreclosure at least against one, if not both, of the mortgagors. It seems there was no objection to the report of the master as to the amount due on the bond, but that the only difficulty was as to how the amount should be paid, whether by first foreclosing the mortgage of Boliver or of Livingston. The amount due being satisfactorily ascertained, and the property mortgaged ample to secure it, the ordinary course would have been to give judgment for the amount due, and to proceed immediately to enforce its payment by decree of foreclosure. The terms of the bond are joint and several in the usual form, and, so far as the creditor was concerned, both the obligors and mortgagors were alike his debtors and bound to pay him. But, without denying the debt or their liability to pay it, they claim that as between themselves the bond does not

express their true relations, that, in fact, they are not equally bound, but, on the contrary, one is principal and the other only surety, with all the rights and liabilities respectively incident to that state of facts. *Brandt Sur.*, §§ 17, 18.

We agree that the consideration of the question as to the real relation of the parties naturally preceded foreclosure, as upon its decision depended the order in which the securities were liable. The judge below did consider and decide the question, reversing the master upon the point, and holding that Boliver was principal and Livingston surety. He did not, however, follow up that finding by a decree of foreclosure in conformity with it, but recommitted the whole case, with instructions upon that point alone. It is true that the matter of recommitting a report, being somewhat administrative in its character, is ordinarily left to the discretion of the Circuit Judge; but it seems to us that in this case the plaintiff should not have been delayed only because of the number of her securities, but that she was entitled to have a judgment for the amount of her debt and a decree of foreclosure in conformity to the ruling of the judge, that Boliver was the principal, and, as a consequence, that the property covered by his mortgage was primarily liable and should be first sold.

But was it error on the part of the judge to hold that Boliver was the principal and Livingston only surety? It strikes us that it is a very peculiar case, and not by any means free from difficulty. If both the obligors had originally negotiated the loan, each giving the separate security of a mortgage for the same money, which was delivered by the creditor to one of them, there can be little doubt that the one receiving the money, and for that very reason, would have been considered and treated as the principal and the other as surety. See *Brandt Sur.*, § 25. But we think the rights of these parties, as between themselves, should not be determined alone by the fact that Livingston got the cash then raised, but that such fact must be considered in connection with the other circumstances, and the contract and intention of the parties.

It does not appear that this loan was negotiated by both parties. So far as we know, Canaday, the creditor, was not acquainted with Livingston. He did, however, know Boliver, and

had before lent him money (the $1,500) upon the security of a mortgage of real estate. Boliver, for a consideration, undertook to obtain the money and "advance" it to Livingston, who, it seems, had nothing to do with the negotiations until there was a hitch on account of the creditor requiring additional security, when Boliver communicated to Livingston that Canaday "required a mortgage of his lands also," which was given. Livingston contracted to pay back the money thus raised, not to Canaday, but to Boliver, who attached his name first to the note. Under these circumstances, we are constrained to hold that, as between themselves, Boliver was to borrow the money and "advance" it to Livingston; that Livingston got the money, not directly from the creditor, but indirectly through Boliver, to whom chiefly the credit was given; and, therefore, as to Canaday, the mortgage of Livingston was merely cumulative, and the lands mortgaged by Boliver are primarily liable and must be first sold in discharge of the debt to Canaday.

We do not, however, think that the contract of the parties had the effect of making Livingston nothing more than a mere surety for the whole debt, in the sense that its payment by Boliver, considered as the principal, must operate to discharge Livingston entirely. While Livingston was merely surety to the extent of the $1,500, which Boliver had previously borrowed from Canaday and which was included in the bond, the whole transaction, considered together, made him something more than a mere surety as to the $6,000, which he then received as the fruit of the arrangement. A Court of Equity will look at all the circumstances of a case, to determine whether or not a party is a surety and entitled to be treated as such. Assuming that the mortgage of Livingston was, as to Canaday, only cumulative, is it not manifest that it was intended as one of the securities for the money then received by him? "The general criterion is the continued existence of the debt." 3 *Pom. Eq. Jur.*, § 1195.

If Boliver was the debtor of Canaday, Livingston was certainly the debtor of Boliver for the same money; and upon its being paid by Boliver, or out of his property, he will be entitled as equitable assignee to set up the mortgage of Livingston as to the lands, upon which it now has a lien, to secure any balance of the $6,000

"advanced" on that occasion by Boliver to him.  "Where there are two or more sureties for the same principal debtor and for the same debt or obligation, whether on the same or different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens.  The same doctrine applies, and the same remedy is given, between all those who are jointly, and jointly and severally, liable on contract or obligation in the nature of contract.  The right, however, may be controlled or modified by express agreement among the co-sureties or debtors."  3 *Pom. Eq. Jur.*, § 1418.

In order to carry out the view taken, there should be, first, a decree of foreclosure of so much of the lands covered by the mortgage of Boliver as may be necessary to satisfy the balance of the mortgage debt, and if that is not sufficient, then the lands covered by the mortgage of Livingston should be sold; and, second, there should be an accounting ordered between Boliver and Livingston, in which Livingston should be charged with the $6,000 which he received as then "advanced" to him by Boliver, but he should at the same time receive credit for all payments made by him and credited by the direction of Boliver and to his relief on the bond to Canaday.  This to be an original accounting, entirely unaffected by the former findings of the master, under a different view of the facts; and especially as to who made the payments of $1,410.75, November 15, 1877, and of $100, May 3, 1878, credited on the bond to Canaday.

The judgment of this court is, that the cause be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the conclusions herein announced.